**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KATHLEEN BRITT, individually and** | ) | |
| **As the Surviving Parent of JASON BRITT, and** | ) | |
| **As Personal Representative on behalf of JASON** | ) | |
| **BRITT, deceased** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 4:23-CV-3316** |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **AGAPE BAPTIST CHURCH, INC. d/b/a** | ) | |
| **AGAPE BOARDING SCHOOL  et. al.** | ) | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT CEDAR COUNTY SHERIFF'S AND**</u>
<u>**JIM BOB McCRARY'S MOTION TO DISMISS**</u>

COMES NOW Plaintiff, Kathleen Britt, and hereby opposes Defendant McCrary and Cedar County's Motion to Dismiss.  As grounds for this Opposition, Plaintiff states as follows:

**I.    Introduction**

The Cedar County Sheriff's office and the named defendants violated Plaintiff Jason Britt's constitutional rights and they engaged in actions that they knew or should have known would cause irreparable harm to the decedent, Jason Britt. The actions of the Cedar County Sheriff's office were taken as part of an official policy or practice of the Cedar County Sheriff's Office.  Additional information gathered subsequent to the filing of the Complaint establishes that the Sheriff's Office took over supervision of the boys from the school at least one time per year.  During that time, multiple complaints of abuse were made by the boys to Jim Bob McCrary and others affiliated with the Sheriff's office.

Jason Britt grew up in a religious household.  His father was a coach.  Although Britt was athletic, he was small in high school.  Jason attended private schools until he was in Junior High School.  At fifteen, he went to public school.  There he met his first girlfriend.  He was an honor

student.  In the second semester, he began partying and his grades and sports performance declined.  He began partying with drugs some and drinking.  Aside from recreational use of drugs and alcohol, he had no health issues at the time.  His parents became increasingly distraught about his partying and threatened him with boarding school.  Then, when he was sixteen, he was taken to Agape Boarding School.  While at the school, Jason was physically, emotionally, psychologically and sexually abused.  Jason developed significant coping mechanisms that prevented him from understanding the abuses that he suffered.

Over the course of several years, Ms. Britt learned that virtually every representation made by Agape about it's "Christian" institution had been a lie

Jason's physical and mental health kept deteriorating.  He was depressed, anxious and suicidal.  He wrote a suicide note about six months before he died.  He took drugs including cocaine and mushrooms.  He suffered from post-traumatic stress disorder and had difficulty handling interactions with people in normal settings like going to the grocery store.  Jason attended counseling, as does Kathleen Britt, as a result of the post traumatic stress disorder that each suffered.  Jason tried to stop drinking and drugs but he could never keep himself together.  Jason died of multi-organ failure in February, 2022 at the age of 29.  The steroids, testosterone, high blood pressure and anxiety coupled with the drug addiction were the mechanism of his death; the cause of his death was the abuse at Agape.

Kathleen Britt contacted the Cedar County Sheriff's Office once the actions of Agape became known to her.  Despite her contact, the Cedar County Sheriff's office took no action to protect the other children.  Subsequently she found that the Cedar County Sheriff's office had actively protected and concealed the abuses occurring at Agape.

In his suicide note, Jason wrote that he hoped his life would be significant by making sure other children were protected from Agape and what he experienced. Jason Britt suffered substantial pain and suffering between the time of the negligence and abuses he experienced at Agape and the time of his death.

The Cedar County Sheriff Department personnel knew of multiple reports of sexual and physical abuse at Agape Boarding School and its sister property, Circle of Hope Boarding School. Despite these reports, children who reported or ran away were routinely returned to the Schools without investigation or reporting to the Children's Division. Additionally, an inherent conflict of interest existed in that Graves, Sandoval and others worked at both Agape and Cedar County Sheriff's Department. Despite that fact, some of these same individuals were responsible for the investigation of reports of abuse. The Cedar County Sheriff's Department had an official policy or unofficial practice or lack of training that caused the violation of these children's rights – including Jason Britt.

Sheriff Jimbob McCrary has been the Sheriff of Cedar County since approximately 2017. Prior to becoming Sheriff, he worked as both Police Chief for Stockton and in law enforcement at the Cedar County Sheriff's office. During his tenure with the Sheriff's Department, McCrary became aware of and "investigated" reports of abuse at Agape Boarding School. Sheriff McCrary took no actions regarding the inherent conflict of interest that existed as his employees were some of the same individuals who had reports of abuse made against them. No effective actions were taken regarding the reports of abuse. Sheriff McCrary maintained a policy or practice of refusing to investigate and / or report allegations of abuse at Agape, returning children to the school for further abuse. Sheriff McCrary failed to train his officers and deputies causing foreseeable harm to these children.

Robert Graves is a resident of Cedar County. At all times, Graves was a security personnel for Agape Boarding School as well as a Deputy Sheriff for Cedar County. Upon information and belief, he also was engaged in transport of students to Agape Boarding School. Graves knew of the physical and sexual abuse of plaintiff as well as others.

Jason Britt died as a direct and proximate result of the abuses of Defendants' wrongful conduct and / or was deprived of a material chance of survival.

## II.    LEGAL ARGUMENT

### A.  *Standard of Review*

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the Plaintiff's Amended Petition. It assumes that all of Plaintiff's averments are true and liberally grants to Plaintiff all reasonable inferences therefrom. "A Fed.R.Civ.P. 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, a court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed/2d 338 (1989). To survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The issue in considering a motion to dismiss is not whether a plaintiff will ultimately prevail at trial, but whether she is entitled to present evidence in support of the claim. *See Neitzke*, 490 U.S. at 327.

Motions to Dismiss based upon the Statute of Limitations have special considerations. The Statute of Limitations is an affirmative defense that must proved by the defendants in any matter.  "The moving party bears the burden of establishing a right to judgment as a matter of law." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo.banc 2006). *See*

*Heibreder v. Tambke,* 284 S.W.3d 740 (Mo.App. W.D. 2009). "The party asserting the affirmative defense of the running of the applicable statute of limitations has the burden of proving it*." Lomax v. Sewell,* 1 S.W.3d 548, 552 (Mo.App. 1000).

Normally, whether a statute has run is a question of law. *Id.* "However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." *Lomax,* 1 S.W.3d at 552-53. The case of *White V. Zubres,* 222 S.W.3d 272 (Mo.banc 2007) is instructive as to how a court must deal with statute of limitation issues. First, it recognizes factual development is necessary, requiring discovery. *White* indicates that the statute of limitation is an affirmative defense and a defendant must produce facts establishing that the action has been filed out of time. Once the defendant produces such facts, the plaintiff must then show countervailing facts that would either tend to prove that in fact the statute had not run or that an exception to the statute of limitation applies to the matter. If a plaintiff establishes such facts, then the issue of limitations becomes a jury question. *Id.* at 275-277. Where the limitations question such as found here turns on factual discovery, and then deciding the issue on a bare motion to dismiss is inappropriate.

**B.  *Defendant Cedar County is Appropriately Named***

Plaintiff amended his petition with the Court's permission  so that Cedar County is named as a defendant instead of Cedar County Sheriff. A summons for service to the County has been requested and will be served although the County has both actual and constructive notice of the lawsuit. The County is a proper party to the lawsuit; the Sheriff's department is a department of the County and not capable of being sued. *Catlet v. Jefferson County,* 299 F.Supp. 2d 967, 968-969 (E.D. Mo. 2004). Plaintiff has resolved that issue.

While a municipality may not be held responsible under a theory of *respondeat superior,* it may be sued "when execution of a government's policy . . . inflicts the injury that the government as an entity is responsible under Sec. 1983." *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694 (1978). While plaintiff does allege that the sexual abuse of Jason Britt occurred at the hands of Graves, Sandoval, Jackson and others, it was the policy of refusing to investigate[1] and report in violation of state statutes; returning children who reported abuse to the abuser in violation of state regulations; aiding and abetting the abuses; ratifying the abuses and fraudulently concealing the abuses of which Plaintiff complains. She also complains that there was a failure of training for the law enforcement personnel in Cedar County that renders the county liable. *Id.*

## C. *Wrongful Death Claims*

Plaintiff Jason Britt died in February, 2022. Kathleen Britt filed her action for wrongful death in 2023 and as personal representative for lost chance of survival in 2023. Under R.S.Mo. 537.080 and 537.100, each of these claims are timely.

The Missouri Wrongful death statute sets forth the manner in which loved ones may bring a cause of action for wrongful death. It is a creature of statute and the language of the statute controls who may bring such an action and how it may be brought. *Smith v. Brown & Williamson Tobacco Corp.,* 275 S.W.2d 748, 760 (Mo.App. W.D. 2008).

The wrongful death statute provides compensation for the loss of the "companionship, comfort, instruction, guidance, counsel and . . . support" of one who would have been alive but

---

[1] Judge Kays asked the question as to whether ratifying conduct through failing to investigate allegations of sexual abuse vitiates sovereign immunity. "Count V alleges that Defendants violated the Missouri Childhood Sexual Abuse Statute, Mo. Rev. Stat. § 537.046, by ratifying Roberson's conduct through failing to thoroughly investigate the 2008 allegations of sexual abuse. There exists no legal authority in Missouri that directly addresses whether sovereign immunity applies to this statutorily created cause of action."*O.S. v. Kan. City Pub. Schs*, No. 13-0261-CV-W-DGK, 2013 U.S. Dist. LEXIS 148683, at *7 n.1 (W.D. Mo. Oct. 16, 2013).

for the defendants' wrongs. *O'Grady v. Brown,* 654 S.W.2d 904 (1983). Wrongful death

requires "but for" causation. "But for" causation is merely "causation in fact." *Callahan v.*

*Cardinal Glennon Hosp.,* 863 S.W.2d 852 (1993). In common parlance, "but for" causation

requires a plaintiff to draw a straight line from the actions of the defendant to the harm caused.

Defendant misapprehends that there is a *cause* for the death and a *mechanism* for Jason's

death. As set forth in the petition, the *mechanism* of Jason's death was multi-organ failure

occurring due to his copious use of steroids, testosterone, drug addiction and anxiety. The *cause*

of Jason's death was the ongoing effects of the physical and mental abuse and gang rape that

Agape and its employees, servants and agents meted out to him.

*Callahan* explains the difference. In *Callahan,* Danny Callahan was given a live polio

vaccine that paralyzed him. The *mechanism* of the paralysis was the live vaccine. However, the

*legal cause* or "but for" causation for the paralysis was the negligence of the physician, nurse

and hospital in failing to properly treat the child after having shown symptoms of polio following

the live vaccine.[2]

*Callahan* also explains that "but for" causation includes situations in which multiple

actor's actions combine to create the injury. *Id. At* 863. In this case, the physical torture and

gang rape of Jason Britt forever changed him. The rape and torture caused him to suffer mental,

psychological and emotional harm including post traumatic stress disorder, depression and

anxiety. He had fear of being gang raped again, driving him to excessive use of performance

enhancing drugs. He suffered depression and anxiety, causing him to self-medicate with other

---

[2] In every successful injury case of any kind, there will be a *mechanism* of injury – a head hitting a windshield during a car wreck, a person suffering stroke during a hospital procedure, an ankle being broken due to a slip at a grocery store – and a *cause* of injury – running a red light, being given too much blood thinner, failing to clean up a spill. The question becomes can a plaintiff prove that administering the blood thinner was negligent or legally wrongful in some manner.

substances. His psychological pain from the trauma was so high that he wanted to die – as evidenced by the suicide note he left six months prior to his body shutting down. A direct line can be traced from all of these symptoms – including his death – to the actions of those involved in the torture and gang rape of this young man.

Expert testimony is often required in these kinds of cases to establish causation. Where proof of causation requires a certain degree of expertise, the plaintiff must present expert testimony to establish causation. *Sundermeyer v. SSM Reg'l Health Servs.,* 271 S.W.3d 552 (2008). Where factual development has not yet taken place, and Plaintiff anticipates expert opinion will be adduced on the issue of causation, the Court should not now look beyond the pleadings to determine that Plaintiff cannot make this factual showing as defendant requests.

Kathleen Britt set forth in her petition the facts that show how Jason Britt was impacted by the events that occurred at Agape Boarding School. From paragraph 56 through 72 of the complaint, Britt describes in detail how the abuses affected Jason Britt and how they led to his death. Taking the petition as true, Plaintiff has pleaded that those involved in the abuse and gang rape of Jason caused his injuries and his death. "It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied by a wrongful death statute." *O'Grady v. Brown,* 654 S.W.2d at 909 (*quoting Van Beeck v. Sabine Towing Company,* 300 U.S. 342, 350-51, 57 S.Ct. 452, 456, 81 L.Ed. 685 (1937).

### C. Statutes of Limitation

An action for wrongful death is a statutory cause of action with it's own limitation period. Regardless of the legal theory under which the wrongful death claim is pursued, the wrongful death statute of limitation applies to the claim. *Caldwell v. Lester E. Cox Medical Centers – South,* 943 S.W.2d 5 (1997) explains that while a personal injury action arising from medical

malpractice is barred after two years, an action for wrongful death based upon that medical malpractice must be filed within three years of the decedent's death. "If death results from medical malpractice, the parties as named in R.S.Mo. §537.080 may maintain a wrongful death action within the limitation period set out in §537.100." *Id.* At 9. *See also Wilson v. Jackson,* 823 S.W.2d 512, 513 (Mo.App. 1992). Death resulting from any tortious act gives rise to a right of action for wrongful death rather than a personal tort. *Caldwell,* 943 S.W.2d at 9.

In this case, all of the torts leading to Jason's death are subsumed within the wrongful death statute. The tortious behavior including engaging in childhood sexual abuse, intentional failure to supervise, and all of the other pleaded torts are part of Kathleen Britt's claim for wrongful death of her son. Regardless of the underpinnings, Kathleen Britt had three years within which to file her Complaint. She met that deadline and each of the claims for torts leading to Jason's wrongful death are timely. *Caldwell,* 943 S.W.2d at 9.

### D. *Plaintiff's Fraud Claims Are Timely*

Kathleen Britt has her own claims for fraud, separate and apart from the claims "owned" by Jason Britt at the time of his death that fall within the Wrongful Death statute of limitation. The allegations in the Complaint are clear – it took Ms. Britt years to discover that she had been defrauded. Ms. Britt *did not* learn that she had been defrauded by Agape at the time that she saw the little boy crying. At that time, she had no other information that Agape had affirmatively lied to her about the nature of the school, the lack of schooling, the physical deprivation and abuse. She did, however, see that her son did not thrive there. The mere fact that her son did not thrive at Agape is not sufficient to put her on notice that Agape was engaging in fraud. "Notice" for purposes of the statute of limitation occurs when the party "is in possession of or has notice of the main fact constituting the fraud." *Boland v. St. Luke's Health Sys.,* 588 S.W.3d 879 (Mo.

2019). Plaintiff Kathleen Britt did not know or have reason to know that her son had been gang raped, that the representations made by Agape were untrue; that the representations made by the individual defendants were untrue; or that JimBob McCrary and the Sheriff's Department had engaged in efforts to silence Jason Britt and others who tried to make official reports to them about the abuse taking place at Agape. Kathleen Britt had no way to discern that fraud had occurred.

Defendant repeatedly states that fraud is a five year statute of limitation. That is not entirely correct. Under R.S.Mo. 516.120, an individual has ten years to discover the fraud occurred. Once discovery has occurred, that defendant then has five years from that date to bring their cause of action. Fifteen years is the longest that anyone has to bring a cause of action – ten years to discover the fraud and five years after discovery to bring their action. *See Boland v. Saint Luke's Health Sys.,* 588 S.W.3d 879, 882 (Mo. Banc 2019). Kathleen Britt suffered economic harm as a result of the fraud including payment of expenses for Jason's healing, payment for her own healing and payment for the schooling that was supposed to be provided but was not. Accordingly, Plaintiff's causes of action should be deemed timely and defendant placed in the position of proving its affirmative defense.

D. ***Plaintiff Has Pleaded Fraud with Sufficient Detail to Support her Claims***

An affirmative representation is not always required for actionable fraud to exist. Silence can equal misrepresentation if the silent party has a duty to speak. *Mobley v. Copeland,* 828 S.W.2d 717, 724 n. 6 (Mo.App. 1992). Concealment of a fact which one has a duty o disclose serves as a substitute for a fales and fraudulent representation in the tort of Fraud. *Triggs v. Risinger,* 772 S.W.2d 381, 382 (Mo.App. 1989).

The County employees as well as Jim Bob McCrary had a duty to speak regarding the actions at Agape.  Many children would have been saved from abuse if the County employees and Jim Bob McCrary had reported the abuses of which they were well aware and had been told by multiple boys.  The Sheriff and deputies received multiple reports of abuse at Agape from boys who ran away.  Additionally, Jim Bob McCrary and other members of the sheriff's department and police department took custody of the boys during special occasions and events including Valentine's day.  On those days, these individuals gave the staff the evening off and took over the duties of supervision of the boys. During that time, Jim Bob McCrary and other individuals were told of the abuses they were suffering at Agape.  Once these boys told them of the abuse, they had a duty to speak in both their individual capacities while taking the supervision of the boys and as mandated reporters as part of their duties in law enforcement.

Although these defendants in both their individual and law enforcement capacities had a duty to report under the Missouri Reporting Statute, they collectively failed to so at any time. Mo.Rev.Stat. § 210.115.  The purpose of that act is to promote the safety of children.  Failing to report is a misdemeanor.  Mo. Rev. Stat. Sec. 210.109(2)(1994).  Not only did these defendants fail to report known abuses at Agape, they used their authority as law enforcement to thwart any ability for DFS/The Children's Division to prevent the state from investigating claims of abuse against Agape and the Clemensons.

Cedar County and The Cedar County Sheriff's Department acted in an affirmative manner to hide the abuse of these children from others including the children themselves by teaching them that they had no rights, that they were to blame for the events, that they were liars and other forms of psychological and physical actions that caused the violation of these children's rights – including Jason Britt.  They returned children to the home after receiving

reports of abuse without investigation and without informing DFS. These actions thwarted any investigations that could have freed these children from the daily sadism occurring at Agape Boarding School.

While there is no private right of action for failing to report, in a matter such as this, that failure amounts to fraudulent non-disclosure. "In nondisclosure cases, a party's silence amounts to a representation where the law imposes a duty to speak." *Blaine v. J.E.Jones Const. Co.,* 841 S.W.2d 703, 707 (Mo.App. E.D. 1992). Jim Bob McCrary and the other law enforcement defendants had an exorbitant amount of information that required they place the safety of children front and center. They did not take any action of any kind – and they engaged in joint, high-profile public events that represented to the public at large that Agape and the individual defendants including Julio Sandoval, Brent Jackson and others, were outstanding, with special skills and abilities to help children in their moral and educational formation. These facts constitute fraud by silence. Given these failures and the substantial facts Plaintiff offers in support, Plaintiff's claims for fraud should not be dismissed.

### E. JimBob McCrary is Liable for his Individual Acts

Defendant argues that McCrary was not a public official at the time of the acts, or at least not a sheriff at that time. Defendant then argues that he is entitled to official immunity for the acts that occurred prior to his becoming sheriff. Not only does this completely misread the facts alleged, it is also wrong. If McCrary was not a public official at the time of the acts, he is responsible for his own torts at the time they were committed. If he was a public official, then the court must analyze his actions under that theory.

Jim Bob McCrary is responsible for his actions that occurred both before and after he became sheriff of Cedar County. As set forth above, Jim Bob McCrary knew of the abuses that

were occurring at Agape and even though he was then chief of police, he took no action of any kind whatsoever. McCrary is individually liable for his action in covering up the abuses both before and during his tenure as Sheriff. The Cedar County Sheriff James McCrary, Robert Graves and others engaged in fraudulent concealment of the abuses occurring at Agape.

Defendants engaged in trickery, deceit and acts of deluding decedent and those who were in a position to act on decedent's behalf while a minor including the plaintiff Kathleen Britt. Defendants engaged in fraudulent concealment in the following particulars:

    a. Defendants Cedar County Sheriff's department, Sheriff James McCrary, Robert Graves and other employees of the Cedar County Sheriff's Department received multiple reports of abuse occurring at both Circle of Hope Boarding School and Agape Boarding School.

    b. The Sheriff Defendants knew at the time of the events in question that Circle of Hope and Agape had a unity of management and worked together in joint adventures as members of the Sheriff's Department worked at both entities.

    c. With regard to both Circle of Hope and Agape, the Department engaged in an official policy or unofficial practice in which they returned children who ran away or complained back to the facility.

    d. At the time they returned the children back to the facility or took reports of abuse, the Sheriff Defendants did not make required reports to the Children's Division.

    e. At the time they returned the children back to the facility or took reports of abuse, they Sheriff Defendants allowed individuals who worked at Agape to investigate the claims of abuse.

f. At the time they returned the children back to the facility or took reports of abuse, the Sheriff Defendants failed to investigate the claims of abuse.

g. At the time they returned the children back to the facility or took reports of abuse, the Sheriff Department maintained those who had been accused of abuse on its payroll including Defendants Sandoval and Graves.

h. In the cases of Graves and Sandoval, they had actual knowledge that each had caused injury to the plaintiff and other children. Following that actual injury, each made statements designed to conceal the existence of any claim for abuse including threatening the children into silence and telling law enforcement that they knew the child to be a pathological liar or otherwise troubled or mentally ill.

Jim Bob McCrary has an independent basis for liability. He, himself, took supervision and control of the students during special events at Agape. During that time, students made reports to him of the abuses that were occurring there. As a result of his taking supervision of the children, he had an independent duty to supervise and report that was individual unto himself. Additionally, in his role as police officer then sheriff, he had an additional duty based upon that exalted position.

The Agape Defendants including the individual staff members followed a policy that prohibited investigation into allegations of misconduct at Agape. This was aided and abetted by the Sheriff's department and specifically Jim Bob McCrary as the individual staff members were deputy sheriffs who had actual knowledge of the abuse and who wore their uniforms and guns at the facility, holding themselves out as law enforcement. McCrary knew of the relationships

between Agape and law enforcement and fostered those relationships.[3] No effective actions were taken regarding the reports of abuse. Sheriff McCrary maintained a policy or practice of refusing to investigate and / or report allegations of abuse at Agape, returning children to the school for further abuse. Sheriff McCrary failed to train his officers and deputies causing foreseeable harm to these children.

Plaintiff does more than allege mere negligence. Plaintiff alleges substantial fraud. While McCrary may have been negligent in his actions toward the students, those actions are also imbued with fraudulent intent because he acted in a manner to silence the students in order to protect the other law enforcement personnel – Graves, Sandoval and others. This raises the bar beyond mere negligence. Under Missouri law, "[e]ven a discretionary act . . . will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008), as modified on denial of reh'g (Sept. 30, 2008); *see also McCormack v. Douglas*, 328 S.W.3d 446, 449 (Mo. Ct. App. 2010).

As this court held in the *Maggie Drew v. Circle of Hope* case, affirmatively hiding children to prevent DFS from investigating claims of abuse does support a cause of action. Similarly, maintaining a policy or practice of refusing to investigate and report allegations of abuse then returning children to school for further abuse in order to protect the abusers likewise supports a cause of action for fraud or fraudulent concealment of a tort. Defendant asserts without authority that McCrary is entitled to official immunity on the fraud claims but offers no case law to support that broad assertion. That assertion is legally incorrect. *See FCS Advisors,*

---

[3] Investigation subsequent to filing the amended petition has revealed an even more incestuous relationship between Agape and the Sheriff's department, McCrary, and Graves. Plaintiff should be allowed discovery to determine the parameters of these relationships.

*LLC v. Missouri,* No. 2:17-cv-04089-NKL, 2017 U.S. Dist. LEXIS 170551, at *27-28 (W.D. Mo. Oct. 16, 2017)(mere negligence not enough; must show fraud or malice).

### F. Defendant McCrary Has no Official Immunity

In a § 1983 action, qualified immunity shields a governmental official from liability "unless his conduct violates a clearly established statutory or constitutional right of which a reasonable person would have known". *Coker v. Arkansas State Police, et. al.,* No. 12-3601 (8th Cir. 2013) *citing Loch v. City of Litchfield,* 689 F.3d 961, 965 (8th Cir. 2012). In addition, official immunity does not apply where the official's discretionary act was undertaken in bad faith or with malice. *Hawkins v. Holloway,* 316 F.3d 777, 788-789 (8th Cir. 2003). Malice prevents official immunity or the public duty doctrine from providing a shield to the officers or the county. *Guthrie v. Franklin County,* 2008 WL 4890579 (Nov. 12, 2008). In this matter, Graves and McCrary are liable as their conduct violated a clear constitutional right. Each person has a right to their bodily integrity, to be free from sexual assault and harassment. McCrary was a law enforcement official at all times relevant. That he was first with the police department then with the Sheriff's office makes no particular difference as to whether he has official immunity.

McCrary participated in the constitutional violations. As Chief of Police and Sheriff of the County, he had supervisory authority over the individuals who committed the offenses. When he took custody of the children during special events and was told of the abuses, he directly participated in the constitutional violations. He was *directly told* of the abuses and took no action. He, instead, chose to cover up the abuses. As a deputy, he also had the duty to intervene where constitutional violations are occurring.

A police officer has the duty to intervene where constitutional violations are occurring. McCrary did not do so although he had the ability. Any law enforcement officer who fails to act,

for example, to prevent excessive use of force may be held responsible for that failure. *Nance v. Sammis,* 583 F.3d 604 (8th Cir. 2009). The elements that must be established are: 1) the officer knew or had reason to know that excessive force would be or was being used; and 2) the officer had the means and opportunity to prevent the harm from occurring. *Id.* at 612. McCrary is likewise responsible because he knew or had reason to know that both excessive force and sexual assaults were occurring; he had the means and opportunity to prevent the harm from occurring.

Finally, to the extent that the defendant is trying to cloak himself with official immunity for acts that occurred prior to him becoming law enforcement, that draws the theory too tight. Shielding officials for decisions other than those made in the exercise of the sovereign's power which go to the essence of governing, extends the doctrine of official immunity beyond its original intent to promote smooth and effective government. *State ex rel. Eli Lilly & Co. v. Gaertner,* 619 S.W.2d 761, 765 (Mo. Ct. App. 1981)(official immunity only applies to the acts of governing). Likewise, McCrary may be held responsible for acts that occurred in his individual capacity unrelated to the police department or the sheriff's department as he placed himself in a position of supervision over the boys but was grossly negligent in the manner in which he supervised them.

### G. Cedar County is not Entitled to Sovereign Immunity

Besides constitutional violations as addressed below, sovereign immunity is expressly waived in two situations in the state of Missouri. "The two waivers of immunity from liability and suit for compensatory damages for negligent acts or omissions in section 537.600.1(1)-(2) are for injuries caused by public employees' negligent operation of motor vehicles in the course of their employment and for injuries caused by a dangerous condition of a public entity's property. Section 537.610.1 also provides sovereign immunity is waived by a

public entity's purchase of liability insurance for tort claims under certain circumstances." *City of Harrisonville v. Bd. of Trs. of the Mo. Petro. Storage Tank Ins. Fund*, 655 S.W.3d 770, 774 (Mo. 2022). At this point in time, it is impossible to know whether there is insurance coverage that covers these losses. Discovery on this matter must occur before a motion to dismiss can be granted.

### H. Cedar County May be Held Responsible for its Policies and Lack of Training

While a municipality may not be held responsible under a theory of *respondeat superior,* it may be sued "when execution of a government's policy . . . inflicts the injury that the government as an entity is responsible under Sec. 1983." *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694 (1978).

A governmental entity may be held liable for maintaining and enforcing an unconstitutional policy or practice or for improper training that leads to constitutional violations. Municipal policy is a "'deliberate choice to follow a course of action . . . made from among various alternatives" by an official who has the final authority to establish governmental policy." *Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). *Freeman v. Clay Cty. Bd. of Cty. Comm'rs,* No. 4:22-CV-04177-CBK, 2023 U.S. Dist. LEXIS 223968, at *24 (D.S.D. Dec. 11, 2023) In this matter, the defendants have a "pattern of 'persistent and widespread' unconstitutional practices which become so 'permanent and well settled' as to have the effect and force of law." Jane Doe A, 901 F.2D at 646 (*quoting* Monell, 436 U.S. at 691).*Freeman v. Clay Cty. Bd. of Cty. Comm'rs,* No. 4:22-CV-04177-CBK, 2023 U.S. Dist. LEXIS 223968, at *26-27 (D.S.D. Dec. 11, 2023)

While plaintiff does allege that the sexual abuse of Jason Britt occurred at the hands of Graves, Sandoval, Jackson and others, it was the policy of refusing to investigate[4] and report in violation of state statutes; returning children who reported abuse to the abuser in violation of state regulations; aiding and abetting the abuses; ratifying the abuses and fraudulently concealing the abuses of which Plaintiff complains. She also complains that there was a failure of training for the law enforcement personnel in Cedar County that renders the county liable.

### I. Plaintiff's Claims under 42 U.S.C. Sec. 1983 are not Time Barred.

Every Federal statute of limitation includes within it a fraud-based discovery rule. "[T]his court long ago 'adopted as its own the old chancery rule that were a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute of limitations does not begin to run until the fraud is discovered." *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). "When a statute is silent on the issue of a claim's accrual [citations omitted], the fraud-based discovery rule operates as a statutory presumption 'read into every federal statute of limitation. This circumscribed rule is distinct from the general discovery rule in that it governs only "cases of fraud." *Merck & Co. v. Reynolds,* 559 U.S. 633, 644, 130 S.Ct. 1784, 176 L.Ed. 2nd 582 (2010).

Sec. 1983 therefore accrues only after fraud has been discovered. Agape, McCrary and the Cedar County sheriffs worked hard to prevent Kathleen Britt and other parents from discovering what was really going on in that school. The school sent out newsletters / blogs to parents routinely, telling them how to behave with their children and what to expect –

---

[4] Judge Kays asked the question as to whether ratifying conduct through failing to investigate allegations of sexual abuse vitiates sovereign immunity. "Count V alleges that Defendants violated the Missouri Childhood Sexual Abuse Statute, Mo. Rev. Stat. § 537.046, by ratifying Roberson's conduct through failing to thoroughly investigate the 2008 allegations of sexual abuse. There exists no legal authority in Missouri that directly addresses whether sovereign immunity applies to this statutorily created cause of action."*O.S. v. Kan. City Pub. Schs*, No. 13-0261-CV-W-DGK, 2013 U.S. Dist. LEXIS 148683, at *7 n.1 (W.D. Mo. Oct. 16, 2013).

inoculating parents against claims by their children that things were not as the school represented. The Sheriff's department refused to investigate or report allegations of abuse, preventing DFS from doing its job. The department and McCrary took active steps to hide the fact of the abuses from all others, in order to protect themselves. In every way, the Sheriff's department aided and abetted, ratified and conspired to fraudulently conceal the abuse occurring.

Ms. Britt used every tool available to her to discern why her son acted the way he did. Despite her efforts, she did not learn of the fraud engaged in by these individuals until years later. These allegations are sufficient to avoid dismissal based upon the statute of limitation.

Unless a petition shows on its face an insuperable bar, the statute of limitation is an affirmative defense that must be pleaded and proved by the defendant. "A court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. Nor should a complaint be dismissed merely because it does not state with precision all elements that give rise to a legal basis for recovery. Therefore as a practical matter, a dismissal under Fed. R.Civ.P. 12(b)(6) should be granted only in the unusual cases in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Wal-Mart Stores, Inc. v. Watson,* 94 F.Supp.2d 1027 (D. Ark. Mar. 30, 2000) In this case, the petition shows no such insuperable bar. The TVPA is either subsumed into the wrongful death statute of limitation, or it includes within it the fraud discovery exception engrafted into every Federal statute of limitation. Since Plaintiff has established that she and Jason were defrauded by Agape and the other defendants but did not learn of it for several years, the court should construe the petition in her favor and rule that her TVPA cause of action is timely.

### J. Lost Chance of Survival is Not Only a Medical Malpractice Claim

The Survival statute states as follows: 1) Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of actions shall have accrued; but in the case of the death of either or both such parties, such cause of action shall survive to the personal representative of such injured party, and against the receiver or corporation liable for such injuries . . ." R.S.Mo. 537.021.

Plaintiff in her personal capacity is permitted to bring causes of action on behalf of Jason Britt's estate, regardless of whether they are medical malpractice causes of action. These causes of action, as laid out in the petition, are alternative causes of action to the wrongful death cause of action. They are personal causes of action to the plaintiff that survive and may be brought by his estate. *Id.*

Plaintiff Kathleen Britt brings the survivor causes of action – premised on the torts perpetrated upon Jason Britt prior to his death – in her capacity as personal representative. Defendant offers no legal argument regarding the claims of Jason Britt under the survivorship statute except that they are time barred. Because Jason Britt did not comprehend the injury that had been inflicted upon him until well after leaving Agape, his causes of action did not begin to run. Further, as discussed above, the Federal TVPA statute contains a fraud discovery rule inherent within it. These two facts render Plaintiff's claims timely.

Defendant claims that Britt's claim under the survivorship statute are vague. To the extent that they are not understood by counsel, Plaintiff requests the opportunity to amend in order to clarify their meaning.

### III. CONCLUSION

For the above and foregoing reasons, Plaintiff respectfully requests the Honorable Court to overrule defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

*/s/ Rebecca M. Randles*
REBECCA M. RANDLES          MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Kansas City, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

and
Gerald F. McGonagle, Mo Bar #39480
Jarrett Aiken Johnson, Mo. Bar#42481
McGONAGLE SPENCER JOHNSON, LLC
4505 Madison Avenue
Kansas City, MO 64111
816-875-5754
jarrett@mcgonaglespencer.com


ATTORNEYS FOR THE PLAINTIFFS


CERTIFICATE OF SERVICE

I HEREBY Certify that the above and foregoing document was duly filed and served this 21rd day of February, 2024 via the Court's efiling service.

*/s/ Rebecca M. Randles*
Attorney for Plaintiffs
_

Gerald F. McGonagle                            MO #39480
Jarrett A. Johnson                             MO #42481
McGonagle Spencer Gahagan, P.C.
1533 Locust Street
Kansas City, Missouri 64108
(816) 221-2222
(816) 221-2245 (FAX)
gmcgonagle@mcgonaglespencer.com
jarrett@mcgonaglespencer.com

ATTORNEYS FOR PLAINTIFF