# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

KATHLEEN BRITT, individually and
As the Surviving Parent of Jason Britt, and
As Personal Representative on behalf of
JASON BRITT, deceased

        **Plaintiffs,**

  v.

AGAPE BAPTIST CHURCH INC., d/b/a
AGAPE BOARDING SCHOOL,
JULIO SANDOVAL, *individually and in his
role As Dean of Students for Agape Boarding
School,*
SAFE, SOUND AND SECURE YOUTH
MINISTRIES, INC.,
BRENT JACKSON, *Individually and in his role
as Vocational Director and Staff Member for
Agape Boarding School,*
SCOTT DUMAR, *Individually and in his role
as Medical Director, Member of the Board of
Directors and Staff Member for Agape Boarding
School,*
JON WILKE, *Individually and in his role as
Staff Member for Agape Boarding School,*
DAVID WILSON, *Individually and in his role
as Staff Member for Agape Boarding School,*
ROBERT GRAVES, *Individually and in his
role as Staff Member at Agape Boarding School,
and Individually and as Deputy Sheriff for
Cedar County, State of Missouri,*
CEDAR COUNTY MISSOURI,
JAMES "JIMBOB" McCRARY, SHERIFF, in
his Individual and Official Capacity,

        **Defendants.**

**Case No.:   6:23-cv-03316-MDH**

## <u>ORDER</u>

1

Before the Court is Defendant Cedar County, Missouri's ("Cedar County") Motion for Summary Judgment. (Doc. 165). Defendant Cedar County filed Suggestions in Support, (Doc. 166), Plaintiff filed Suggestions in Opposition, (Doc. 184) and Defendant Cedar County filed a reply. (Doc. 189). The motion is now ripe for adjudication on the merits. For the reasons stated herein, Defendant Cedar County's Motion for Summary Judgement is **GRANTED**.

## BACKGROUND

This is a wrongful death action brought by Plaintiff Kathleen Britt who is the mother of Jason Britt, the decedent in this case. She brings this suit against Agape Boarding School ("Agape"), those with leadership positions at Agape, members of the Cedar County Sheriff's Department, and Cedar County itself. Plaintiff is a resident of Idaho, and all Defendants are citizens of Missouri.

Defendant Agape was a non-profit organization with its principal place of business in Stockton, Missouri. Jason Britt attended Agape at the age of 16 for approximately four months sometime between 2009 and 2010. Plaintiff alleges that Jason Britt was brutalized by Defendants Jackson, Sandoval, and Wilke. Plaintiff claims Jason Britt was held down and a broom/mop handle was inserted into his rectum. After Jason Britt left Agape, he allegedly developed an interest in weightlifting to protect himself from sexual assault. It is claimed Jason Britt used steroids, developed a drug addiction, post-traumatic stress disorder, depression, anxiety and suicidal tendencies. Jason Britt died from multi-organ failure due to steroids, testosterone, high blood pressure and anxiety coupled with the drug addiction. Plaintiff asserts Jason Britt's death was a direct result of the abuses he suffered at Agape.

Plaintiff alleges that those associated with the Cedar County Sheriff's Department were aware of reports of abuse happening at Agape during this period and that Cedar County itself, through the Sheriff's Department, had on occasion taken actual custody and supervision of the students after learning of abuses. Plaintiff further alleges no one at the Sheriff's Department reported those abuses and continued to return students to Agape without remedial action.

Plaintiff's Fourth Amended Complaint ("Complaint") alleges one count against Defendant Cedar County; Count Eight - Violation of 42 U.S.C. § 1983.[1] Defendant Cedar County brings its current motion seeking summary judgment on this count arguing that there is no underlying constitutional violation of any Cedar County employee; Plaintiff's retained expert fails to establish that the death of Jason Britt was the result of any action or inaction of Cedar County; and there is no evidence in the summary judgment record that the problems complained of were widespread or persistent to state a *Monell* claim.[2] The Court will evaluate Defendant Cedar County's arguments below.

**STANDARD**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not

---

[1] Plaintiff's Fourth Amended Complaint alleges three counts against Defendant Cedar County. However, Plaintiff's Count Five - Negligent Hiring, Supervision, Retention and Failure to Warn as well as Count Nine - Claims for Relief by Kathleen Britt have already been dismissed by this Court for failure to state a claim upon which relief can be granted. (Doc. 159). To the extent Plaintiff attempts to reraise these counts, they are once again dismissed for the same reasons as articulated in this Court's prior Order.

[2] Defendant Cedar County additionally argues that summary judgment should be granted as Cedar County Sheriff's Department is not an entity that can be sued. However, the Court has already ruled on that argument in a prior Order and thus will refrain from reanalyzing that argument. (Doc. 84).

find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### I.        Underlying Constitutional Violation

Defendant Cedar County argues that since there is no underlying constitutional violation that can be shown by Plaintiff, Defendant Cedar County is entitled to summary judgment as a matter of law. Plaintiff argues that Defendant Cedar County had a clear practice of returning children to Agape Bording School without investigation. Plaintiff asserts this policy was in effect and actually effectuated by Defendant McCrary as well as unknown police officers both before and after Jason was a student there. In support, Plaintiff has provided affidavits from three former students who either ran away or knew of runaways who were subsequently returned to Agape. Plaintiff further argues that reports were never placed into the files of Cedar County when the students were returned summarily and, for those in which the boys were found by Agape, the reports of their elopement were deleted from the system entirely, making any form of investigation impossible. Plaintiff states that Defendant McCrary engaged in a practice of allowing Agape to dictate the investigations into the reports of abuse, and that if Cedar County had investigated and/or

reported appropriately to the Children's Division for investigation of the complaints, the children would not have been harmed.

A governmental entity cannot be held vicariously liable for its agent's acts under § 1983. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Section 1983 liability for a constitutional violation may attach to a municipality if the constitutional violation resulted from (1) an "official municipal policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Id.* A municipality cannot be held liable, however, where there is no underlying constitutional violation. (*Molina v. City of St. Louis, Missouri*, 766 F. Supp. 3d 857, 866 (E.D. Mo. 2025) (citing *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)) ("in order for municipal liability to attach, individual liability must first be found on an underlying substantive claim.").

Plaintiff has failed to show that Defendant Cedar County engaged in any wrongful conduct that deprived Jason Birtt of a constitutionally protected right. Plaintiff has produced three affidavits of other students at Agape attempting to show that Cedar County should have been aware of abuses and thus should have investigated the matter fully. The first affidavit is from Colton Schrag, a student at Agape in 2003-05 and again from 2006-10. (Doc. 184-5, ¶¶ 1-2). Mr. Schrag stated:

> In 2008, I ran away…. I was picked [up] by local law enforcement. He asked me what I was doing and I told him I was running away. I told the deputy that they were beating on us, slamming us around. The deputy said he did not believe me and he took me back to Agape. He did not take a report or anything. He did not talk to other boys or staff. I'm unsure if my parents had been notified.
>
> …
>
> I was not the only boy that ran away and was returned. I can't remember all of them. I remember that approximately 6 – 8 boys tried to run away. On each occasion, they were returned to Agape by law enforcement.

*Id* at ¶¶ 9 and 11. The second affidavit is from James Griffey who was a student at Agape from 1998 – 2001. (Doc. 184-6, ¶¶ 1-2).[3] Mr. Griffey stated:

> In 1998 I knew kids were missing, they had run away…. Multiple kids ran away trying to escape the abuse during my time there, only to be returned right back into the hands of their abusers. And when they were returned, they were made an example to the rest of us, instilling fear into us that we should suffer the same (or worse) if we tried to run away. Staff members taunted us boys, saying you can try and run but you'll be brought back by the local authorities. As a staff member I don't recall any incident reports being made regarding any kids who ran away or were missing. To my knowledge the parents were not notified; child protective services were not contacted. We were told the school had influence with the Cedar County law enforcement and the county officials.

*Id* at ¶¶ 11-12. The last affidavit is from Denzyl Dudley, a student at Agape from 2005-06 and again from 2009-10. (Doc. 184-10, ¶¶ 2-3). Mr. Dudley stated:

> I tried to escape. I was returned to Agape by the Cedar County Sheriff even though I told them that I was being beaten. Then, I stole a car and drove to Waynesville where my brother was. I told him about the abuse there. I was criminally prosecuted for taking the car. James McCrary was the investigating officer regarding the car theft. I told everyone who would listen about the abuse that occurred at Agape. I told my attorney and I believe that James McCrary knew as well. Nothing was done and I now have a criminal conviction as a result. There was no one to turn to and no one to tell about what happened at Agape. We knew that the Cedar County Sheriff's Department would just return kids if they ran away. I knew of several that tried and they were just brought back. No one would believe us - especially me - because I was black and because I was labeled as a troubled kid.

*Id* at ¶¶ 19-21. Plaintiff provides evidence that shows that students ran away from Agape and were subsequently returned. Two of the students allege that they had informed Cedar County law enforcement of physical abuses that were occurring at Agape but were subsequently returned. No one reported abuse directly to Defendant McCrary. The identity of the Cedar County officer to whom abuse was allegedly repeated is not known.

---

[3] Defendant McCrary was still working with the Stockton, Missouri Police Department until 2002 and would not have knowledge of any abuses stemming from those incidents as Agape Boarding School would have been the jurisdiction of the Cedar County Sheriff's Department at that time. Doc. 167-5, page 24 lines 15-22

6

This is in contrast to Defendant McCrary's deposition testimony in this matter. In Defendant McCrary's deposition, he was asked about his investigations regarding runaways from Agape.[4] The pertinent testimony is reproduced below:

Q.     Can you tell me when you conducted an investigation regarding Agape?

A.     There have been several over the years. I couldn't tell you specifically the dates.

Q.     Okay. How many would you estimate that you've conducted investigations?

A.     That I have conducted myself personally?

Q.     Yes, you personally have conducted.

A.     Eight, ten.

Q.     And what were the allegations in the investigations that you conducted, the eight to ten?

A.     Several of those were -- involved runaways, young men that ran away from the school. And it was basically a brief investigation, go look for them and if you find them.

Q.     What were you supposed to do if you found a runaway from the school?

A.     Take them back to the school.

Q.     Okay. Was -- did any of the runaways ever make any reports to you or to the sheriff's department that you're aware of that abuse was occurring at the school?

A.     Not to me. None of them ever did that with me.

Q.     Okay. When a report of abuse comes in, do you have standard protocols and practices that you were supposed to follow with regard to those reports?

A.     Yes.

Q.     Can you tell me what they are?

A.     The basic principles of any investigation is the same. You gather information, talk to witnesses. If there's a crime scene, you process that. If applicable, on a child abuse case, we would contact the juvenile office.

---

[4] Defendant McCrary started as a police officer with the Stockton, Missouri Police Department on December 8, 1988. (Doc. 167-4, page 13 lines 13-17). Defendant McCrary worked for the Stockton Police Department until it merged with the Cedar County Sheriff's Department in 2002. *Id* at page 34 lines 15-17. Defendant McCrary testified that any reports concerning Agape prior to 2002 would have been handled by the Cedar County Sheriff's Department as Agape Boarding School was not within the municipal limits of Stockton, Missouri. Doc. 167-5, page 24 lines 15-22.

7

Q. Okay.

A. Call in a child abuse hotline or contact Children's Division, get them involved. At some point if you have enough information, enough evidence, probable cause, you could get the suspect and interview that person.

Q. Okay.

A. And if there's enough to file a charge, we would write up a probable cause statement and take that to the prosecutor.

Q. Okay. Did any child -- or do you know if the sheriff's department ever made a hotline or a report to DFS concerning Agape?

A. Yes. I'm pretty sure, yeah, several times.

Q. Okay. Do you know what the outcomes of those reports were?

A. Every one that I'm aware of was unsubstantiated by Children's Division.

(Doc. 167-4, page 19 line 10 - page 21 line 15).

Here, Defendant McCrary testified that he had eight to ten investigations of Agape primarily concerning runaways, finding no evidence of abuse.[5] No reports of abuse had been made to Defendant McCrary and Defendant McCrary had no investigations involving Jason Britt or any alleged abuse of Jason Britt. Defendant McCrary testified that Cedar County's policy was to take back runaway students to Agape. However, if a student had reported abuse, then a different protocol was used as described above. Further, Defendant McCrary stated that any reports of abuse that had been made were to the Missouri Department of Family Services were found to be unsubstantiated by the Children's Division. The record indicates that Jason Britt, during his tenure at Agape for four months sometime in 2009 to 2010, never attempted an escape nor was he ever returned by a Cedar County officer. (Doc. 166-4, page 84 line 22 - page 85 line 1). There is no

---

[5] Defendant McCrary testified that he had taken one or two runaways back to Agape personally. (Doc. 167-4, page 55 lines 6-8). Defendant McCrary stated that he would talk to them and ask them how it was going there and why they ran away and things like that and the runaway students would respond that the rules were too strict, they couldn't see their friends anymore, hang out or do what they wanted as justification for leaving. *Id* at page 55 lines 16 through page 56 line 2.

evidence of any claims of abuse to Jason Britt that were even reported to any Cedar County officer or the subject of any investigation by Cedar County or the Missouri Department of Family Services. As Plaintiff cannot prove that Defendant Cedar County, Missouri's wrongful conduct deprived Jason Britt of a constitutionally protected right, Plaintiff cannot maintain this count. Viewing the evidence in the light most favorable to the Plaintiff, there are no genuine issues of material fact, and Defendant Cedar County is entitled to judgment as a matter of law. For the reasons stated, Defendant Cedar County's Motion for Summary Judgment on Count Eight - Violation of 42 U.S.C. § 1983 is **GRANTED**.

## II. Other Arguments

The Court having granted Defendant Cedar County's Motion for Summary Judgment on Count Eight - 42 U.S.C. § 1983 will decline to further analyze Defendant Cedar County's other arguments.

### CONCLUSION

For the reasons stated, Defendant Cedar County's Motion for Summary Judgment is **GRANTED**. Summary judgment is hereby entered in favor of Defendant Cedar County on Count Eight - Violation of 42 U.S.C. § 1983.

**IT IS SO ORDERED.**

Date: April 30, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

9