# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

KATHLEEN BRITT, individually and
As the Surviving Parent of Jason Britt, and
As Personal Representative on behalf of
JASON BRITT, deceased

        Plaintiffs,

v.

AGAPE BAPTIST CHURCH INC., d/b/a
AGAPE BOARDING SCHOOL,
JULIO SANDOVAL, *individually and in his role As Dean of Students for Agape Boarding School,*
SAFE, SOUND AND SECURE YOUTH MINISTRIES, INC.,
BRENT JACKSON, *Individually and in his role as Vocational Director and Staff Member for Agape Boarding School,*
SCOTT DUMAR, *Individually and in his role as Medical Director, Member of the Board of Directors and Staff Member for Agape Boarding School,*
JON WILKE, *Individually and in his role as Staff Member for Agape Boarding School,*
DAVID WILSON, *Individually and in his role as Staff Member for Agape Boarding School,*
ROBERT GRAVES, *Individually and in his role as Staff Member at Agape Boarding School, and Individually and as Deputy Sheriff for Cedar County, State of Missouri,*
CEDAR COUNTY, MISSOURI,
JAMES "JIMBOB" McCRARY, SHERIFF, in his Individual and Official Capacity,

        Defendants.

Case No.:   6:23-cv-03316-MDH

## ORDER

1

Before the Court are Defendants Robert Graves and James "Jimbob" McCrary's (collectively "Individual Cedar County Defendants") Motion for Summary Judgment. (Doc. 167). Individual Cedar County Defendants filed Suggestions in Support, (Doc. 168), Plaintiff filed Suggestions in Opposition, (Doc. 185) and Indivdual Cedar County Defendants filed a reply. (Doc. 188). The motion is now ripe for adjudication on the merits. For the reasons stated herein, Individual Cedar County Defendants' Motion for Summary Judgement is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

This is a wrongful death action brought by Plaintiff Kathleen Britt who is the mother of Jason Britt, the decedent in this case. She brings this suit against Agape Boarding School ("Agape"), those with leadership positions at Agape, members of the Cedar County Sheriff's Department, and Cedar County itself. Plaintiff is a resident of Idaho, and all Defendants are citizens of Missouri.

Defendant Agape was a non-profit organization with its principal place of business in Stockton, Missouri. Jason Britt attended Agape at the age of 16 for approximately four months sometime between 2009 and 2010. Plaintiff alleges that Jason Britt was brutalized by Defendants Jackson, Sandoval, and Wilke. Plaintiff claims Jason Britt was held down and a broom/mop handle was inserted into his rectum. After Jason Britt left Agape, he allegedly developed an interest in weightlifting to protect himself from sexual assault. It is claimed Jason Britt used steroids, developed a drug addiction, post-traumatic stress disorder, depression, anxiety and suicidal tendencies. Jason Britt died from multi-organ failure due to steroids, testosterone, high blood

2

pressure and anxiety coupled with the drug addiction. Plaintiff asserts Jason Britt's death was a direct result of the abuses he suffered at Agape.

Plaintiff alleges that those associated with the Cedar County Sheriff's Department were aware of reports of abuse happening at Agape during this period and that Cedar County itself, through the Sheriff's Department, had on occasion taken actual custody and supervision of the students after learning of abuses. Plaintiff further alleges no one at the Sheriff's Department reported those abuses and continued to return students to Agape without remedial action. Defendants Sandoval and Graves allegedly worked both at Agape and as members of the Sheriff's Department.

Plaintiff's Fourth Amended Complaint ("Complaint") alleges four counts against Defendant Graves: Count One is a wrongful death actions premised on childhood sexual abuse; and Counts Four through Six are wrongful death actions premised on negligence.[1] Plaintiff's Complaint alleges one count against Defendant McCrary, Count Eight a wrongful death action premised on a violation of 42 U.S.C. § 1983.[2] Individual Cedar County Defendants bring their current motion seeking summary judgment on the remaining claims arguing that there is no genuine issue of material fact and Individual Cedar County Defendants are entitled to judgment as a matter of law. The Court will evaluate the Individual Cedar County Defendants arguments below.

---

[1] Plaintiff's Fourth Amended Complaint alleges seven counts against Defendant Graves. However, Plaintiff's Count Three - Action Under 18 U.S.C. § 1581 et seq. and Count Nine - Claims for Relief by Kathleen Britt were already dismissed by this Court for failure to state a claim upon which relief can be granted. (Doc. 84). Further, the Court in its October 23, 2025, Order dismissed Count Eight - Violation of 42 U.S.C. § 1983 as to Defendant Graves in his individual and official capacity. (Doc. 190). Thus, to the extent Plaintiff attempts to reraise these counts as to Defendant Graves, they are once again dismissed for the same reasons denoted in this Court's prior Orders.

[2] Plaintiff's Fourth Amended Complaint alleges two counts against Defendant McCrary. However, Plaintiff's Count Nine - Claims for Relief by Kathleen Britt had already been dismissed by this Court for failure to state a claim upon which relief can be granted. (Doc. 84). To the extent Plaintiff attempts to reraise this count as to Defendant McCrary, it is once again dismissed for the same reasons stated in this Court's prior Order.

**STANDARD**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

Individual Cedar County Defendants argue that Plaintiff does not have any evidence demonstrating that any Individual Cedar County Defendant caused, or even contributed to cause, Jason Britt's death. Individual Cedar County Defendants assert that Defendant McCrary did not become the Sheriff of Cedar County until at least seven years after Jason Britt had left Agape. Further, Individual Cedar County Defendants assert Defendant Graves did not become a deputy with Cedar County, and had no affiliation with any law enforcement, until 2017, at least seven years after Jason Britt left Agape. Individual Cedar County Defendants argue that Plaintiff also has failed to produce expert testimony providing a causal link between the Individual Cedar

4

County Defendants and Jason Britt's death. Plaintiff argues that Dr. Peterson has drawn a straight line from the abuses suffered by Jason Britt at Agape Boarding School to his ultimate death. In support, Plaintiff states that Dr. Peterson testified to a reasonable degree of psychiatric certainty that Agape, and those that colluded therewith, caused or contributed to cause Jason Britt's death. Thus, Plaintiff argues that she has met the elements of causation required by the wrongful death statute.

Under Missouri law, "Proof of causation entails proof of causation in fact, or 'but-for' causation, as well as proximate causation." *Aaron v. Nat'l R.R. Passenger Corp.*, 163 F.4th 503, 511 (8th Cir. 2025) (quoting *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 562 (Mo. 2014)). But-for causation is causation in fact; it requires the plaintiff to prove their injury would not have occurred but for the defendant's conduct. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860–61 (Mo. 1993). Specifically, in a wrongful death action, the plaintiff must prove the decedent would not have died but for the defendant's conduct. *Sanders v. Ahmed*, 364 S.W.3d 195, 209 (Mo. 2012). In a wrongful death action, but-for causation is "established through expert testimony that there is a reasonable degree of medical or scientific certainty that but for the tortfeasor's conduct," the decedent would not have died. *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 482 (cleaned up) (quoting *Lowe v. Mercy Clinic E. Cmtys.*, 592 S.W.3d 10, 18 (Mo. Ct. App. 2019)). But-for causation is not established, however, if an expert testifies that a defendant's conduct " 'might' " or "'could have'" caused the decedent's death, "though other causes are possible[.]" *Baker v. Guzon*, 950 S.W.2d 635, 647 (Mo. Ct. App. 1997) (stating "such testimony is devoid of evidentiary value").

## I.      Defendant McCrary

Plaintiff has failed to prove causation in this case as to Defendant McCrary. Nowhere within Dr. Peterson's Diagnostic Record Review ("Report") does he mention Defendant McCrary by name or allude to personal wrongdoing by Defendant McCrary. (Doc. 167-7). Additionally, during Dr. Peterson's deposition, he was asked whether he had formed an opinion regarding Defendant McCrary which shows the following conversation:

> Q. In those pleadings if you look there will be statements and agreements that Sheriff McCrary did not become the sheriff of Cedar County until 2017. So assuming that is correct, are you going to offer any opinions regarding Sheriff McCrary at the trial of this case?
>
> A. I'm going to say provisionally I can't answer one way or the other because I don't know what the other -- what the depositions of the people who worked at Agape say at this point. I don't know Sheriff McCrary's involvement prior to becoming sheriff.
>
> Q. And you haven't seen anything at least as of today's date that would allow you to have formed an opinion regarding Sheriff McCrary; is that fair?
>
> A. Yes, one way or the other. I mean, I have Mr. Dudley and Mr. Britt's statements that some of the men were either sworn officers or volunteer officers or something like that and that's a red flag, but I don't have the full data yet.
>
> Q. Okay. So as you sit here today, you have no opinions about Sheriff McCrary but to be fair to you it sounds like if you do additional work in this case, that may or may not change. Is that right?
>
> A. That's absolutely correct.

(Doc. 167-6, page 76 line 3 - page 77 line 6). Nothing in Dr. Peterson's Report nor his deposition can show that but-for Defendant McCrary's conduct, Jason Britt would not have died. Dr. Peterson has conceded that he has no opinions about Sheriff McCrary or his involvement prior to becoming Sheriff in 2017, seven years after Jason Britt attended Agape.[3]

Further, Plaintiff argues that Defendant McCrary should have been aware of abuse by the staff at Agape, and that his failure to investigate said abuse resulted in Jason Britt being deprived

---

[3] The expert deadline and the discovery deadline have both passed in this case and no other supplementation may be done by Dr. Peterson that could show causation at it relates to Defendant McCrary. (Doc. 111).

6

of a constitutional right. Plaintiff attempts to do this by producing three affidavits of other students at Agape who either ran away or knew of runaways, showing that Defendant McCrary should have known about the alleged abuses that caused these students to run away from Agape. The first affidavit is from Colton Schrag, a student at Agape in 2003-05 and again from 2006-10. (Doc. 184-5, ¶¶ 1-2). Mr. Schrag stated:

> In 2008, I ran away…. I was picked [up] by local law enforcement. He asked me what I was doing and I told him I was running away. I told the deputy that they were beating on us, slamming us around. The deputy said he did not believe me and he took me back to Agape. He did not take a report or anything. He did not talk to other boys or staff. I'm unsure if my parents had been notified.
>
> …
>
> I was not the only boy that ran away and was returned. I can't remember all of them. I remember that approximately 6 – 8 boys tried to run away. On each occasion, they were returned to Agape by law enforcement.

*Id* at ¶¶ 9 and 11. The second affidavit is from James Griffey who was a student at Agape from 1998 – 2001. (Doc. 184-6, ¶¶ 1-2). Mr. Griffey stated:

> In 1998 I knew kids were missing, they had run away…. Multiple kids ran away trying to escape the abuse during my time there, only to be returned right back into the hands of their abusers. And when they were returned, they were made an example to the rest of us, instilling fear into us that we should suffer the same (or worse) if we tried to run away. Staff members taunted us boys, saying you can try and run but you'll be brought back by the local authorities. As a staff member I don't recall any incident reports being made regarding any kids who ran away or were missing. To my knowledge the parents were not notified; child protective services were not contacted. We were told the school had influence with the Cedar County law enforcement and the county officials.

*Id* at ¶¶ 11-12. The last affidavit is from Denzyl Dudley, a student at Agape from 2005-06 and again from 2009-10. (Doc. 184-10, ¶¶ 2-3). Mr. Dudley stated:

> I tried to escape. I was returned to Agape by the Cedar County Sheriff even though I told them that I was being beaten. Then, I stole a car and drove to Waynesville where my brother was. I told him about the abuse there. I was criminally prosecuted for taking the car. James McCrary was the investigating officer regarding the car theft. I told everyone who would listen about the abuse that occurred at Agape. I told my attorney and I believe that James McCrary knew as well. Nothing was done and I now have a criminal conviction as a result. There was no one to turn to and

7

no one to tell about what happened at Agape. We knew that the Cedar County Sheriff's department would just return kids if they ran away. I knew of several that tried and they were just brought back. No one would believe us - especially me - because I was black and because I was labeled as a troubled kid.

*Id* at ¶¶ 19-21. Plaintiff provides evidence that shows that students ran away from Agape and were subsequently returned. The Dudley affidavit is the closest evidence linking Defendant McCrary to reports about abuse happening at Agape. However, even this affidavit does not explicitly state that Mr. Dudley informed Defendant McCrary of the abuse. It states only that "James McCrary was the investigating officer regarding the car theft. I told everyone who would listen about the abuse that occurred at Agape. I told my attorney and *I believe* that James McCrary knew as well." *Id*. (Emphasis added). Mr. Dudley never states that Defendant McCrary picked up and returned him to Agape nor informed Defendant McCrary about the abuses at Agape.

This is in contrast to Defendant McCrary's deposition testimony in this matter. In Defendant McCrary's deposition, he was asked about his investigations regarding runaways from Agape.[4] The pertinent testimony is reproduced below:

Q.     Can you tell me when you conducted an investigation regarding Agape?

A.     There have been several over the years. I couldn't tell you specifically the dates.

Q.     Okay. How many would you estimate that you've conducted investigations?

A.     That I have conducted myself personally?

Q.     Yes, you personally have conducted.

A.     Eight, ten.

Q.     And what were the allegations in the investigations that you conducted, the eight to ten?

---

[4] Defendant McCrary started as a police officer with the Stockton, Missouri Police Department on December 8, 1988. (Doc. 167-4, page 13 lines 13-17). Defendant McCrary worked for the Stockton Police Department until it merged with the Cedar County Sheriff's Department in 2002. *Id* at page 34 lines 15-17. Defendant McCrary testified that any reports concerning Agape prior to 2002 would have been handled by the Cedar County Sheriff's Department as Agape Boarding School was not within the municipal limits of Stockton, Missouri. Doc. 167-5, page 24 lines 15-22.

A.      Several of those were -- involved runaways, young men that ran away from the school. And it was basically a brief investigation, go look for them and if you find them.

Q.      What were you supposed to do if you found a runaway from the school?

A.      Take them back to the school.

Q.      Okay. Was -- did any of the runaways ever make any reports to you or to the sheriff's department that you're aware of that abuse was occurring at the school?

A.      Not to me. None of them ever did that with me.

Q.      Okay. When a report of abuse comes in, do you have standard protocols and practices that you were supposed to follow with regard to those reports?

A.      Yes.

Q.      Can you tell me what they are?

A.      The basic principles of any investigation is the same. You gather information, talk to witnesses. If there's a crime scene, you process that. If applicable, on a child abuse case, we would contact the juvenile office.

Q.      Okay.

A.      Call in a child abuse hotline or contact Children's Division, get them involved. At some point if you have enough information, enough evidence, probable cause, you could get the suspect and interview that person.

Q.      Okay.

A.      And if there's enough to file a charge, we would write up a probable cause statement and take that to the prosecutor.

Q.      Okay. Did any child -- or do you know if the sheriff's department ever made a hotline or a report to DFS concerning Agape?

A.      Yes. I'm pretty sure, yeah, several times.

Q.      Okay. Do you know what the outcomes of those reports were?

A.      Every one that I'm aware of was unsubstantiated by Children's Division.

(Doc. 167-4, page 19 line 10 - page 21 line 15).

9

Here, Defendant McCrary testified that he had conducted eight to ten investigations of Agape, primarily dealing with runaway students, finding no evidence of abuse.[5] No reports of abuse had been made to Defendant McCrary nor did Defendant McCrary have any investigations involving Jason Britt. The record indicates that Jason Britt never attempted an escape from Agape nor was he ever returned by a Cedar County officer in the four months he attended Agape. (Doc. 166-4, page 84 line 22 - page 85 line 1). There is no evidence that any alleged abuse of Jason Britt was ever repeated to Defendant McCrary or any officer he supervised. Further, the Plaintiff has no information that would support that Defendant McCrary was involved in any allegations of abuse toward her son. (Statement of Uncontroverted Facts "SOF" ¶ 9). As Plaintiff cannot prove that Defendant McCrary had engaged in any wrongful conduct that deprived Jason Britt of a constitutionally protected right, Plaintiff cannot maintain this count as to Defendant McCrary. Viewing the evidence in the light most favorable to the Plaintiff, there are no genuine issues of material fact and Defendant McCrary is entitled to judgment as a matter of law. For the reasons stated, Individual Cedar County Defendants' Motion for Summary Judgment as to Defendant McCrary based on a lack of causation is **GRANTED**.

## II. Defendant Graves

Plaintiff's Complaint alleges four counts against Defendant Graves: Count One is a wrongful death actions premised on childhood sexual abuse; and Counts Four through Six are

---

[5] Defendant McCrary testified that he had taken one or two runaways back to Agape personally. (Doc. 167-4, page 55 lines 6-8). Defendant McCrary stated that he would talk to them and ask them how it was going there and why they ran away and things like that and the runaway students would respond that the rules were too strict, they couldn't see their friends anymore, hang out or do what they wanted as justification for leaving. *Id* at page 55 lines 16 through page 56 line 2.

wrongful death actions premised on negligence. The Court will evaluate each of these counts in turn.

### A. Count One - Childhood Sexual Abuse

Viewing the evidence in the light most favorable to the Plaintiff, there are genuine issues of material fact that renders summary judgment improper as to this count. Plaintiff's Complaint alleges that:

> [David] Wilson and Brent Jackson took Jason to another room. There, [Jon] Wilke, who had been serving as lookout, came into the room and with Jackson, fully restrained Jason, using pressure points to cause severe pain. Jason [Britt] was told to take off his pants and shirt. He took off his shirt assuming he was going to be demoted but refused to remove his pants. Jackson and [Jason] began wrestling when he refused to take off his pants. Jackson pushed [Jason] who was falling and grabbed Jackson, pulling him with [Jason]. At that point, [Julio] Sandoval and [Scott] Dumar came into the room. Wilke grabbed [Jason] and hit him multiple times, cutting Jason's eye in the process. Sandoval and Wilke held [Jason] down. Jackson attempted to masturbate himself as Jason watched. He was gang raped in that room. One of them had a broom or mop handle that they shoved into Jason's rectum. They took his clothes including those bloodied during the gang rape.

(Complaint ¶¶ 50-52). Although Plaintiff does not explicitly allege physical or sexual abuse by Defendant Graves within the alleged incident of gang rape within the body of the Complaint, she includes Defendant Graves within Count One stating:

> Defendants Sandoval, Wilke, Graves, Dumar, Jackson and Wilson engaged in physical assault and sexual conduct and contact upon the person of the Decedent, a minor. Said acts were committed while Defendants were acting within the course and scope of employment with Agape and were committed while Defendants Sandoval, Dumar, Graves, Wilson and Jackson were managing agents of Agape and/or were ratified by Agape.

(Complaint ¶ 96). This allegation is backed up by the Plaintiff's deposition in which she identified the individuals in the alleged rape of Jason. The pertinent part of the deposition is reproduced below:

> Q. Okay. You just have information that [Robert Graves] may have been present at a prior date, fair, at Agape?

A. No, he was one of the ones that raped my son.

Q. I think that's what I just said.

A. Oh, I'm sorry. Yes, he was one of the ones who raped my son.

Q. Where do you get that information?

A. My son told me. In addition, I heard him provide the interview to the media. He wanted me present for that.

Q. Any other source other than basically what your son had said?

A. About the gang rape?

Q. Specifically any other source that Mr. Graves would have been involved in that, did you hear that from any other source other than Jason?

A. Not that I recall at this time.

(Doc. 167-2 page 125 lines 8-25). The deposition also stated the following with regards to the alleged childhood sexual abuse:

Q. Do you know the names of the men that were involved in the alleged incident?

A. Mr. Wilke, Mr. Dumar, Julio Sandoval, Brent Jackson, and Mr. Graves is the best of my recollection.

Q. And your son first told you about that more than five years after he left Agape?

A. That's correct.

*Id* at page 205, lines 9-16.[6] This is in contrast to the deposition of Robert Graves. The pertinent part of the deposition is reproduced below:

Q. Okay. And to be clear, have you ever engaged in the sexual or physical abuse of any child?

A. No.

(Doc. 167-3, page 105 lines 23-25).

---

[6] For the purposes of the motion for summary judgment the Court will consider the statements made by Plaintiff regarding what she was told from her deceased son. However, this is not a binding ruling and whether Plaintiff will be allowed to discuss what her son had told her will be decided at trial.

Here, there exists genuine issues of material fact that would preclude the entry of summary judgment as to this count. Should the trier of facts conclude that Defendant Graves participated in the alleged sexual abuse of Jason, then a jury may find that this trauma could be the proximate cause of Jason's death. The Court finds that, based upon the record, there exists a genuine issue of material fact precluding summary judgment of this issue. For the reasons stated, Individual Cedar County Defendants' Motion for Summary Judgment as to Defendant Graves based on a lack of causation as to Count One - Childhood Sexual Abuse is **DENIED**.

### B. Count Four, Five and Six - Wrongful Death Premised on Negligence Claims

Viewing the evidence in the light most favorable to the Plaintiff, there are genuine issues of material fact that renders summary judgment improper as to these counts. Individual Cedar County Defendants once again argue that Plaintiff does not have any evidence demonstrating that Defendant Graves caused or contributed to cause Jason Britt's death. However, as explained above, there exists a genuine issue of material fact regarding Defendant Graves alleged participation regarding the physical and sexual abuse Plaintiff attributes to Jason's time at Agape. Should the trier of fact find that Defendant Graves participated or even knew of the abuses and refused to assist, then a jury may find that Jason Britt's death was caused or contributed to be caused by Defendant Graves actions. As there continues to be genuine issues of material fact with regards to Defendant Graves participation and knowledge, the Court finds that summary judgment on these counts would be improper. For the reasons stated, Individual Cedar County Defendants' Motion for Summary Judgment as to Defendant Graves based on a lack of causation as to Count Four -

Negligence; Count Five - Negligent Hiring, Supervision, Retention, and Failure to Warn;[7] and Count Six - Negligent Failure to Supervise Children are **DENIED**.

## CONCLUSION

For the reasons stated, Individual Cedar County Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Individual Cedar County Defendants' Motion for Summary Judgment is **GRANTED** as to Defendant McCrary on Count Eight - 42 U.S.C. § 1983. Summary judgment is hereby entered in favor of Defendant McCrary on Count Eight - Violation of 42 U.S.C. § 1983.

 Individual Cedar County Defendants' Motion for Summary Judgment is **DENIED** as to Defendant Graves on Count One - Childhood Sexual Abuse; Count Four - Negligence; Count Five - Negligent Hiring, Supervision, Retention, and Failure to Warn; and Count Six - Negligent Failure to Supervise Children.

**IT IS SO ORDERED.**

Date: April 30, 2026

___/s/ Douglas Harpool_____
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

---

[7] To the extent Plaintiff attempts to allege a negligent hiring, supervision, and retention claim against Defendant Graves it fails. Plaintiff has failed to provide any evidence that Defendant Graves was in a position of authority to hire, supervise, or retain any other staff members of Agape. With regards to the failure to warn claim, the Court will allow Plaintiff to pursue that claim at this stage of the litigation. However, whether Plaintiff has enough information and evidence to submit that claim to a jury will be a determination reserved closer to trial.